**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| WUXI APPTEC CO., LTD., |
| |
| 288 Fute Zhong Road Waigaoqiao<br>Free Trade Zone, Pudong New Area<br>Shanghai, China 200131 |
| |
| *Plaintiff,* |
| |
| v. |
| |
| U.S. DEPARTMENT OF DEFENSE a/k/a<br>U.S. DEPARTMENT OF WAR, |
| |
| 1400 Defense Pentagon<br>Washington, D.C. 20301 |
| |
| PETE HEGSETH, in his official capacity as<br>SECRETARY OF WAR, |
| |
| 1000 Defense Pentagon<br>Washington, D.C. 20301 |
| |
| STEVE FEINBERG, in his official capacity as<br>DEPUTY SECRETARY OF WAR, |
| |
| 1010 Defense Pentagon<br>Washington, D.C. 20301 |
| |
| MICHAEL CADENAZZI, in his official capacity as<br>ASSISTANT SECRETARY OF DEFENSE FOR<br>INDUSTRIAL BASE POLICY, |
| |
| 3050 Defense Pentagon<br>Washington, D.C. 20301 |
| |
| *Defendants.* |

Civ. Action No. 1:26-cv-2069

<u>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

Plaintiff WuXi AppTec Co., Ltd. ("WXAT"), by and through its undersigned counsel,

alleges and states as follows:

1.      WXAT brings this action to challenge and enjoin Defendants' unlawful designation of WXAT as a "Chinese military company" ("CMC") under Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act ("NDAA") for Fiscal Year 2021 (P.L. 116-283), as amended by the NDAA for Fiscal Year 2025 (P.L. 118-159).  Designation under Section 1260H (the "1260H List") has already caused and will continue to cause severe and irreparable harms for WXAT; among them, WXAT is facing potential loss of certain important and high-value customer relationships and future work.

2.      This designation of WXAT by the U.S. Department of Defense (referred to herein by its preferred nomenclature, the "Department of War" or "the DoW") is not the product of reasoned decision-making.  It is the product of political pressure and inaccurate, unsupported assertions.  The DoW's cursory and conclusory justification for WXAT's designation does not withstand scrutiny.  It does not explain the agency's reversal from its prior position—nor could it. It does not identify a factual basis sufficient to satisfy Section 1260H's designation criteria—nor could it.  And it does not dispute the extensive information WXAT provided demonstrating that it unquestionably falls outside Section 1260H's definition of a CMC—nor could it.

3.      WXAT is a widely held, public company traded on the Hong Kong and Shanghai stock exchanges, with U.S. citizens comprising the majority of both the WXAT board of directors and the WXAT executive management team.  WXAT is a leading global provider of research, development, and manufacturing services to more than 4,000 pharmaceutical and life sciences companies, including more than 1,200 customers in the United States, many of them household names.  WXAT supports these customers across the full process of drug-development and manufacturing of innovative and life-saving medicines.

4.    WXAT's designation is an arbitrary reversal of the DoW's previous judgment.  In 2024, WXAT presented information directly to the DoW to establish that WXAT does not meet the Section 1260H designation criteria—that is, the definitional requirements for classification as a CMC under Section 1260H are not present in WXAT.  The DoW, accordingly, declined to designate WXAT as a CMC on the 1260H List published on January 7, 2025.

5.    After Congress modified Section 1260H, WXAT again met with the DoW on November 24, 2025 and again explained why WXAT does not meet the statute's criteria, even as amended.  However, it later became public that weeks prior to this meeting, Deputy Secretary of War ("SoW") Steve Feinberg informed Congress that the DoW intended to designate WXAT and several other companies as CMCs pursuant to Section 1260H.  WXAT provided the DoW with facts that should have precluded DoW's reversal of its position, but WXAT's opportunity to present those facts occurred *after* DoW had already decided to designate WXAT as a CMC, a judgment manifestly unencumbered by any facts.

6.    The irregular, chaotic rollout of the 2026 1260H List confirms that the DoW's designation process of WXAT was not the product of reasoned decision-making.  On February 13, 2026, the DoW posted a list designating WXAT as a CMC and then withdrew the list from public inspection around one hour later, without explanation.  On June 8, 2026, WXAT wrote to Deputy SoW Feinberg and again explained why WXAT does not meet the statutory criteria for designation as a CMC and again offered to answer any questions.  Then, nearly four months after the initial posting–and a mere few hours after WXAT reiterated in its June 8 letter the absence of any legal basis or supporting evidence for designation—the DoW posted a 1260H List, with an official publication date of June 10, 2026, designating WXAT as a CMC.  This unusual and disorderly process is inconsistent with a careful, fact-based national security determination, and instead

reflects an agency action responsive to and influenced by political demands. *See, e.g., Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *5 (D.D.C. Mar. 12, 2021) (*citing Poett v. United States*, 657 F. Supp. 2d 230, 236-37 (D.D.C. 2009)) ("These errors do not inspire confidence in the fastidiousness of the agency's decision-making process.").

7.      The consequences of this unlawful designation have been immediate and severe for WXAT.  By branding WXAT a national security threat without a lawful or factual basis, Defendants have inflicted substantial reputational, commercial, and operational harm on WXAT and threatened continuing injury to WXAT's business, its U.S. customers, and its hundreds of U.S. employees.  The harm caused by the CMC designation is compounded by the recently enacted BIOSECURE Act, Section 851 of the NDAA for Fiscal Year 2026[1].  Designation under Section 1260H automatically results in designation of WXAT as a biotechnology company of concern ("BCC") under the BIOSECURE Act.  The BIOSECURE Act in turn precludes private sector companies from federal contracts or grants involving services directly or indirectly provided by a BCC.  As a result, WXAT's customer relationships with many of its U.S. customers will be severely harmed.

8.      Defendants' actions violate the Administrative Procedure Act ("APA") because the inclusion of WXAT on the 1260H List is arbitrary, capricious, contrary to law, unsupported by substantial evidence, and undertaken without observance of required procedure.  Defendants' actions also violate the Fifth Amendment because WXAT was stigmatized and deprived of protected liberty and property interests without constitutionally adequate notice or process. WXAT therefore seeks declaratory and injunctive relief setting aside the designation, requiring its

---

[1] Pub. L. No. 119-60, § 851, 139 Stat. 718, 981 (Dec. 18, 2025).

immediate removal from the 1260H List, and preventing the Defendants from enforcing or relying on that unlawful designation.

9.     Plaintiff also intends to move for a preliminary injunction to prevent the immediate and irreparable harm to WXAT as a result of Defendants' unlawful designation of WXAT on the 1260H List.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

11.     This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, and the Court's inherent equitable power.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (e) because Defendants are federal agencies and federal officers acting in their official capacities, a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia, and upon information and belief, Defendants reside in this district.

**PARTIES**

13.     Plaintiff WuXi AppTec Co., Ltd. is a joint-stock limited liability company incorporated in China.  Though WXAT is headquartered in Shanghai, China, it has a global footprint, with operations and offices across Asia, the United States, and Europe.  It has more than 4,000 active customers—including global pharmaceutical companies—of which more than 1,200 are based in the United States.  A majority of WXAT's board and executive management team are U.S. citizens.  WXAT helps customers develop and manufacture pharmaceuticals and healthcare products to benefit patients around the world.  The company is publicly traded on the Hong Kong

5

and Shanghai stock exchanges with over 280,000 institutional and individual shareholders as of March 31, 2026.

14.     Defendant U.S. Department of War is an executive agency within the meaning of 5 U.S.C. § 551(1).  The DoW is responsible for publishing and maintaining a list of CMCs, as identified by the SoW, according to the designation criteria in Section 1260H.[2]

15.     Defendant Pete Hegseth is the SoW.  In this capacity, he oversees the functions of the DoW, including the listing of entities as CMCs under Section 1260H.  Secretary Hegseth is sued in his official capacity.

16.     Defendant Steve Feinberg is the Deputy SoW.  In this capacity, he manages the process for the designation and removal of entities on the 1260H List.  He is sued in his official capacity.

17.     Defendant Michael Cadenazzi is the Assistant SoW for Industrial Base Policy.  In this capacity, he manages the process for the designation and removal of entities on the 1260H List.  He is sued in his official capacity.

<u>**FACTUAL ALLEGATIONS**</u>

**I.     WXAT Is a Global Pharmaceutical Services Provider with Extensive and Significant Ties to the United States.**

18.      WXAT is a global provider of services to pharmaceutical and life science companies.  WXAT operates as a customer-driven Contract Research, Development, and Manufacturing Organization ("CRDMO").  The company does not sell its own products and instead supports customers through every stage of drug development.

---

[2] *See* Pub. L. No. 116-283, 134 Stat. 3965, as amended Pub. L. 118-159, 138 Stat. 2123.

19.    WXAT was established in 2000 in China and rapidly developed into a multinational company.  WXAT provides a portfolio of research and manufacturing services for customers and partners in the pharmaceutical and life sciences industries.

20.    WXAT has a global footprint with significant ties to the United States.  WXAT has more than 4,000 active customers, including many prominent global pharmaceutical companies, and more than 1,200 customers in the United States.  The company has 22 facilities in 7 countries, including 4 facilities in the United States, and has hundreds of employees in the United States. WXAT has made significant investments, over $600 million, in U.S. manufacturing, supporting the United States' goals of strengthening supply chains and domestic production capacity.  The company also has made major investments in manufacturing in Europe and Singapore.  A majority of WXAT's directors and executive management team are U.S. citizens.

21.    WXAT is a publicly traded company accountable to its over 280,000 institutional and individual shareholders.  WXAT's controlling shareholder, Dr. Ge Li, is Chairman and Chief Executive Officer of the company and is a U.S. citizen residing in the United States.  Other investors include non-PRC foreign investors, mutual funds, and social security and pension funds.

22.    WXAT complies with U.S. regulatory standards in carrying out its international operations and is subject to rigorous regulatory inspections and consumer audits.  In 2025, WXAT had 741 quality audits and inspections by global customers, regulatory authorities, and third parties, including 60 information security audits by global customers, and achieved 100% pass rate with zero critical findings.  The company screens potential customers and suppliers against restricted party lists based on U.S. sanctions lists and other government concerns.

## II.    WXAT Is Not Affiliated with the Chinese Government or Military.

23.    Contrary to the DoW's unfounded claims, WXAT is not affiliated with the Chinese government or military.  WXAT is not owned by the Chinese Communist Party ("CCP") as the company is publicly traded with a diverse base of over 280,000 public institutional and individual shareholders globally.

24.    Indeed, under PRC law WXAT is not treated as a PRC domestic enterprise but rather a "Foreign-Invested Enterprise" due to the company's substantial non-PRC ownership. Accordingly, in China, WXAT is treated in the same manner as a U.S. or European company's Chinese subsidiary.

25.    WXAT does not participate in defense work—the company does not produce, deliver, or maintain any military weapons systems, subsystems, components, or other defense-related items, and WXAT does not conduct research for the PRC military.  WXAT has no military production licenses, no military personnel, no advertisements on military procurement platforms and no CCP members or People's Liberation Army ("PLA") association among directors or executive management.  WXAT also does not have financial sponsorship of PLA, CCP, or Chinese government events.

26.    Further, WXAT does not have any PLA-related customers, such as PLA-affiliated hospitals, and the company does not provide service to the CCP or any Chinese government agency.  WXAT operates as a CRDMO for prominent global pharmaceutical and life sciences companies and has limited visibility into customer activity.

## III.    WXAT Has Repeatedly Informed and Educated the DoW Regarding its Lack of Chinese Government Affiliation.

27.    WXAT has repeatedly engaged the DoW to discuss its business and explain why the company should not be designated as a CMC pursuant to Section 1260H.  As explained *infra*

8

Section IV.A., Section 1260H defines a CMC as an entity that is either: (I) directly or indirectly owned by, controlled by, or affiliated with specified Chinese government and military agencies, or (II) a military-civil fusion contributor to the Chinese defense industrial base. Neither definition applies to WXAT.

### A. WXAT Presented to the DoW in August 2024 and Was Not Included on the January 2025 1260H List.

28. In 2024, WXAT presented information directly to the DoW during the previous administration (the Department of Defense), via meetings and correspondences, to establish that WXAT does not meet the Section 1260H designation criteria. WXAT briefed the DoW in person on August 26, 2024, and explained that WXAT does not fit the definitional characteristics required for a classification as a CMC under Section 1260H. WXAT further explained the inaccuracy of recent news sources that alleged a connection between WXAT and PLA scientists.

29. The DoW thoughtfully engaged with the briefing and asked several questions following the meeting. WXAT provided written responses to the DoW's requests and confirmed that WXAT never received financial sponsorship from the CCP, PLA, or Chinese Academy of Sciences.

30. The DoW accordingly, and rightly, decided not to designate WXAT as a CMC on the 1260H List published on January 7, 2025.

### B. WXAT Again Briefed the DoW in November 2025, but the DoW Had Seemingly Already Decided to Designate WXAT as a CMC.

31. Following the 2025 amendments to Section 1260H, WXAT requested to meet with the DoW on August 25, 2025 to provide an updated presentation. This meeting was originally scheduled for October 24, 2025, but was rescheduled to November due to the U.S. government shutdown. In the meantime, and unbeknownst to WXAT, Deputy SoW Feinberg wrote to the U.S. House and Senate Armed Services Committees on October 7, 2025, stating that several companies,

9

including WXAT, should be added to the 1260H List.[3]  That is, well before WXAT was able to explain that there had been no changes that would allow designation of WXAT under Section 1260H, the DoW had seemingly already determined to designate WXAT, irrespective of the facts.

32.    The letter to the Armed Services Committee highlighted eight companies with alleged ties to the Chinese military and was sent weeks prior to the October 30, 2025 summit between President Trump and President Xi Jinping, where the countries agreed to a broad trade truce.[4]

33.    On November 24, 2025, WXAT made an in-person presentation to the DoW under the current administration, explaining the Company's business and demonstrating that WXAT does not fit the criteria of a CMC under 1260H, even after the congressional amendments to 1260H.  WXAT presented the DoW with information regarding the Company's business model, investment in the United States, global footprint, and the lack of Chinese state ownership, control, or affiliation.  WXAT informed the DoW that the Company does not meet the criteria of either of the CMC definitional prongs under Section 1260H, for many of the reasons discussed *supra* Section I-II.

34.    At the conclusion of the November 2025 presentation to the DoW, WXAT offered to answer any questions about its operations and business and requested the DoW carefully consider all information related to its evaluation for the 1260H List.  The DoW did not have any additional questions or requests following the meeting.

---

[3] Anthony Capaccio, *Pentagon Cited Alibaba on China Military Aid in Oct. 7 Memo*, BLOOMBERG (Nov. 26, 2025), https://www.bloomberg.com/news/articles/2025-11-26/pentagon-cited-alibaba-on-china-military-aid-in-oct-7-letter.

[4] *Id*.

35.    News of the October letter from the DoW Deputy Secretary surfaced less than two days after the November 2025 WXAT meeting with the DoW.  Immediately after that press reporting, WXAT emailed the DoW to: (1) inquire about the media reports of DoW's intention to designate WXAT, an intention formed well before the WXAT-DoW meeting occurred, and (2) offer to address any questions from the DoW.  The DoW responded that it had "no comment" on the press reporting and that the DoW would follow up with any questions regarding the facts provided by WXAT.  To date, the DoW has never followed up with WXAT in any manner.

**IV.    The DoW's Designation of WXAT as a CMC Was Arbitrary and Capricious.**

    **A.    Section 1260H Aims to Identify Companies Supporting or Contributing to China's Military.**

36.    Section 1260H requires the SoW to identify entities that meet the criteria of a CMC operating in the United States based on the most recent information available.  The Secretary is to publish an annual report listing each entity identified as a CMC, i.e., the 1260H List, and shall include a justification for any entities added or removed.  *See* Section 1260H(b)(1)-(2).

37.    Section 1260H defines a CMC as an entity that is:

(I)    directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State Security (MSS) or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND); or

(II)    identified as a military-civil fusion contributor to the Chinese defense industrial base.

    Section 1260H(g)(2)(B)(i).

11

Accordingly, one of two criteria must apply before an entity can be designated as a CMC: (i) the entity must be directly or indirectly owned by, or controlled by or affiliated with, one of several specified Chinese government entities; or (ii) the entity must be a military-civil fusion contributor to the Chinese defense industrial base.

38.     A military-civil fusion contributor includes any of the following:

(A)     Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives, including selection as a 'Single Champion', 'Little Giant', or any other successor selection or designation as an enterprise associated with industrial planning or military-civil fusion efforts;

(B)     Entities managed, overseen, or supervised by, otherwise under the control of, or affiliated with (including by means of formal participation in research partnerships and projects)

i.      the Chinese Ministry of Industry and Information Technology (MIIT);

ii.     the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC);

iii.    the State Administration of Science, Technology and Industry for National Defense (SASTIND);

iv.     the Ministry of State Security (MSS); or

v.      the People's Liberation Army.

(C)     Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)     Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)     Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

12

(F)    Entities awarded with receipt of military production licenses by the Government of China, including a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)    Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)    Any other entities the Secretary determines is appropriate.

Section 1260H(g)(3).

39. Section 1260H went into effect with the 2021 NDAA, building upon the foundation laid by Section 1237 of the NDAA for Fiscal Year 1999.[5] Like Section 1260H, Section 1237 required the DoW to identify "Communist Chinese military companies" ("CCMC") operating in the United States. Until recently, neither Section 1237 nor Section 1260H required the DoW to provide an explanation or factual basis for inclusion on the CCMC or CMC List, which is now required pursuant to the 2025 amendments to Section 1260H.

40. As a result of the January 2021 publication of the Section 1237 List, several companies challenged their CCMC designation in the U.S. District Court for the District of Columbia, alleging, among other causes of action, that the designations were arbitrary and capricious under the Administrative Procedure Act. Due to the immediate harm facing the listed companies, including reputational damage and unrecoverable financial harm, the U.S. District Court for the District of Columbia granted preliminary injunctions as to Luokung Technology Corp. and Xiaomi Corp, preventing their inclusion on the List. *See Luokung Tech. Corp. v. Dept.*

---

[5] Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Pub. L. No. 105-261 (1998).

*of Def.*, 538 F.Supp.3d 174 (D.D.C. 2021); *Xiaomi Corp.*, 2021 WL 950144.  Rather than appeal

the rulings, the DoW removed Luokung and Xiaomi from the Section 1237 List.

41.    Following these legal challenges, the 1260H List was established to accomplish the

same goals of the Section 1237 CCMC List—primarily "naming and shaming" companies

designated as CMCs.[6]

**B.    The DoW Momentarily Included WXAT on the 1260H List Posted on February 13, 2026.**

42.    On February 13, 2026, without providing notice or an opportunity to be heard, the

DoW published an updated 1260H List that included WXAT.  This list was posted publicly in the

Federal Register *for around one hour* before it was removed, pursuant to a letter request from the

DoW to the Federal Register requiring immediate removal.[7]

43.    The briefly posted list offered minimal explanation for WXAT's inclusion, stating

only: "WuXi AppTec is indirectly owned by SASAC and is indirectly affiliated with SASTIND

and the PLA (Section 1260H(g)(2)(B)(i)(I))."

44.    This asserted basis is conclusory and inaccurate, and the DoW provided no

evidence in support of its assertion—because it has none.  While only momentarily posted, the

February 2026 1260H List received attention from the press, damaging WXAT's reputation.[8]

---

[6] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors.

[7] Michael Martina and Alexandra Alper, *US withdraws newly updated list of firms allegedly aiding China's military*, REUTERS (Feb. 13, 2026), https://www.reuters.com/sustainability/society-equity/us-expected-add-alibaba-others-list-firms-allegedly-aiding-chinas-military-2026-02-13/ (quoting Pentagon letter stating, "we would like to remove this notice from public inspection and withdraw the notice from publication in the Federal Register").

[8] *See, e.g.*, Edwin Chan, *Alibaba Leads Tech Slide After Pentagon Briefly Shows Blacklist*, BLOOMBERG (Feb. 15, 2026) https://www.bloomberg.com/news/articles/2026-02-16/alibaba-

14

45.    The lack of justification and the haphazard posting of the 1260H List illustrate the arbitrary and capricious manner in which the DoW is managing CMC designations amidst political pressure. Reports about the momentary posting in February 2026 indicate disagreements between the White House and Pentagon regarding designating Chinese companies prior to President Trump's meeting with President Xi Jinping, resulting in the list being removed after around one hour.[9] The slapdash posting demonstrates that the 1260H List is being used as a political pawn during negotiations with China, rather than a legitimate, evidence-based national security determination.[10]

---

leads-tech-slide-after-pentagon-briefly-shows-blacklist; Bill Gertz, *Pentagon publishes, then withdraws, new list of Chinese military companies,* WASHINGTON TIMES (Feb. 13, 2026) https://www.washingtontimes.com/news/2026/feb/13/pentagon-publishes-withdraws-new-list-chinese-military-companies/; Francisco Bencosme, *DOD's Chinese Military Companies List Poised for Greater Regulatory Importance*, THE US-CHINA BUSINESS COUNCIL (Feb. 19, 2026), https://www.uschina.org/articles/dods-chinese-military-companies-list-poised-for-greater-regulatory-importance/; Nick Mordowanec, *Chinese Company Names Suddenly 'Withdrawn' From Federal US Government List*, MILITARY.COM (Feb. 13, 2026), https://www.military.com/daily-news/2026/02/13/chinese-company-names-suddenly-withdrawn-federal-us-government-list.html; Michael Martina and Alexandra Alper, *US withdraws newly updated list of firms allegedly aiding China's military*, REUTERS (Feb. 13, 2026), https://www.reuters.com/sustainability/society-equity/us-expected-add-alibaba-others-list-firms-allegedly-aiding-chinas-military-2026-02-13/; Xinmei Shen, Khushboo Razdan, & Vincent Chow, *Pentagon adds Chinese firms to military list, then withdraws filing*, SOUTH CHINA MORNING POST (Feb. 14, 2026), https://www.scmp.com/news/us/article/3343540/pentagon-adds-chinese-firms-military-list-then-withdraws-filing.

[9] Kate O'Keeffe, *Pentagon's Botched Blacklist Highlights Frail Trump-Xi Truce*, BLOOMBERG (May 6, 2026) https://www.bloomberg.com/news/features/2026-05-06/trump-administration-s-pentagon-blacklist-misstep-roils-us-china-tech-ties.

[10] Michael Martina and Alexandra Alper, *US withdraws newly updated list of firms allegedly aiding China's military*, REUTERS (Feb. 13, 2026), https://www.reuters.com/sustainability/society-equity/us-expected-add-alibaba-others-list-firms-allegedly-aiding-chinas-military-2026-02-13/ ("The publication and hasty withdrawal of the list comes as President Donald Trump's administration has sought to avoid antagonizing China following a trade truce reached by Chinese President Xi Jinping and Trump in October. Since then, the administration has taken a softer line on China.").

46. On May 9, 2026, WXAT submitted a Freedom of Information Act ("FOIA") request to the DoW Office of the Secretary and Joint Staff seeking communications and documents pertaining to WXAT's designation. While only momentary, the CMC designation harmed the Company, and WXAT sought to understand the reasoning and factual support for the designation in order to prepare for the official listing. The DoW provided an interim response on May 13, 2026, stating that it would not respond within the FOIA's 20-day statutory period.

47. On June 8, 2026, WXAT wrote to Deputy SoW Feinberg to explain again why WXAT is not a CMC and to specifically explain that WXAT is not indirectly owned by SASAC or indirectly affiliated with SASTIND or the PLA, as alleged in the briefly posted February list. WXAT offered to answer any questions and reminded Deputy SoW Feinberg that the DoW has an obligation to consider all available information in evaluating the 1260H designation.

**C.    The DoW Posted the 1260H List Months Later, Again Designating WXAT.**

48. Merely a few hours after WXAT wrote to Deputy SoW Feinberg to reiterate the absence of any legal basis for designating WXAT, the DoW posted an updated 1260H List, with an official publication date of June 10, 2026 (the "June 2026 1260H List"). The June 2026 1260H List included WXAT without providing any prior notice to WXAT, without providing any opportunity to be heard, and without providing any substantive explanation of the DoW's decision and why it differs from prior decisions.

49. The June 2026 1260H List again offered minimal explanation for WXAT's inclusion, simply stating: "WuXi AppTec is indirectly owned by SASAC and is indirectly affiliated with SASTIND and the PLA (Section 1260H(g)(2)(B)(i)(I))." As explained in WXAT's numerous presentations and correspondence to the DoW, this designation is erroneous, and the DoW did not, and cannot, provide evidence to support these claims.

**D.    The Limited Reasoning Provided by the DoW is Erroneous and Unsupported.**

50.    The DoW's limited reasoning cited for designating WXAT as a CMC is erroneous and unsupported.  As explained, WXAT does not have ties to the Chinese government or military, and the DoW has yet to point to convincing evidence of WXAT's indirect ownership by SASAC or indirect affiliation with SASTIND or the PLA.

51.    Allegations of indirect ownership by SASAC are unfounded and absurd given that WXAT is a publicly traded company with over 280,000 institutional and individual shareholders. The DoW has not provided evidence of any WXAT shareholders having ties to the SASAC, and even assuming it had, that would not be a basis for alleging indirect ownership.  WXAT does not have control over who buys or sells the company's shares.

52.    If a shareholder of a public company, without any actual control over the company, has alleged ties to the SASAC, it cannot logically follow that the company is indirectly owned by the SASAC.  *See SZ DJI Tech. Co. v. U.S. Dep't of Def.,* No. CV 24-2970 (PLF), 2025 WL 2761210, at *19 (D.D.C. Sept. 26, 2025) (finding that "owned" in Section 1260H required "some level of control, not just mere possession of [ ] equity").  This reading of Section 1260H would lead to an absurd and untenable result without a limiting principle, and the DoW must identify some actual level of control to satisfy the CMC definition.

53.    The same is true for the DoW's vague assertion that WXAT is indirectly affiliated with SASTIND and the PLA.[11]  The DoW has not provided clarity on its understanding of indirect affiliation under Section 1260H, and "affiliated," like "owned," must have some limiting principle.

---

[11] Section 1260H defines "affiliated with" as "in close formal or informal association," but this definition does not cure the DoW's vague assertion or provide clarity.  *See* Section 1260H(g)(1).

17

*See Luokung Tech. Corp*, 538 F.Supp.3d 174, 187 ("if Defendants' preferred, extremely broad definition for "affiliated with" is adopted, [ ] it would have almost no limiting principle"). This Court has previously found that "affiliated with," as used in Section 1237, should be given its plain and common meaning which is "a company *effectively controlled* by another or associated with others under common ownership or control." *Xiaomi Corp.*, 2021 WL 950144, at *7 (emphasis added). The DoW's own regulations further illustrate that the term "affiliate" requires control. *See* 32 C.F.R. § 117.3 ("Affiliate means each entity that directly or indirectly controls, is directly or indirectly controlled by, or is under common control with, the ultimate parent entity"); *see also* 32 C.F.R. § 232.3 ("Affiliate means any person that controls, is controlled by, or is under common control with another person."). No such "control"-inferred affiliation exists between WXAT and SASTIND or the PLA.

54.    Even under a broad interpretation—or, for that matter, any interpretation—of "indirectly affiliated with," WXAT is not associated with SASTIND or the PLA. WXAT has repeatedly explained in detail to the DoW that it is not affiliated with the Chinese government or military. Instead of engaging in these briefings or requesting additional information from WXAT, the DoW relies on politically motivated calls for WXAT's inclusion, calls which are completely devoid of credible or accurate support.

55.    On December 18, 2025, several members of Congress wrote to Secretary Hegseth, urging the DoW to add a number of companies to the 1260H List due to those companies' alleged support of Chinese military-civil fusion and advancement of Chinese military capabilities across various sectors; the letter specifically urged designation of WXAT.[12] The December 2025 letter

---

[12] *See* Letter from Chairmen John Moolenaar, Rick Scott, Eric A. Crawford, Andrew R. Garbarino, Rob Wittman, Bill Huizenga, Dusty Johnson, Darin LaHood, and Andy Ogles to Secretary Pete Hegseth (Dec. 18, 2025), https://chinaselectcommittee.house.gov/sites/evo-

cited a prior congressional letter from February 2024 that similarly advocated for the addition of WXAT and other entities to the 1260H List.[13] Notably, the information cited in these letters, in addition to being outdated and unverified, was also available to the DoW when it determined that WXAT was not a CMC prior to the January 27, 2025 publication of the 1260H List.

**V.    WXAT Is Facing, and Will Continue to Face, Immediate, Irreparable Harm as a Result of the Designation.**

56.    The DoW unlawfully included WXAT on the 1260H List, branding WXAT as a national security threat without any support. As a result of the DoW's actions, WXAT has suffered and will continue to suffer significant and ongoing financial and reputational harm.

57.    Entities designated as CMCs under Section 1260H face serious consequences at the state and federal level. WXAT's designation under Section 1260H particularly harms its ability to contract with customers and potential customers due to the recently enacted BIOSECURE Act, Section 851 of the NDAA for Fiscal Year 2026.[14] Designation under Section 1260H automatically results in designation of WXAT as a "biotechnology company of concern" ("BCC") under the BIOSECURE Act, which prohibits federal agencies from entering into contracts or offering loans or grants to any company that uses biotechnology equipment or services produced or provided by a BCC. That BCC status, in turn, not only precludes WXAT from certain U.S. federal funding and contracts, but it also precludes private sector companies—many of which are WXAT customers—from contracting for WXAT services to the extent that these WXAT customers utilize WXAT to provide products or services to the U.S. government. Notably, while the BIOSECURE

---

subsites/selectcommitteeontheccp.house.gov/files/evo-media-document/12.18.25-letter-to-dow-1260h-additions.pdf.

[13] *Id.*

[14] Pub. L. No. 119-60, § 851, 139 Stat. 718, 981 (Dec. 18, 2025).

Act provides mechanisms for certain entities designated as BCCs to challenge and remove their designations, this procedural protection is not offered to entities designated under Section 1260H.

58.     The DoW is also prohibited from entering into, renewing, or extending contracts for the procurement of goods, services, or technologies with entities designated as CMCs, or for goods or services produced or developed by a CMC or its subsidiaries.[15]  The Department of Homeland Security is similarly prohibited from using federal funds to work with a CMC or its subsidiary under the Further Consolidated Appropriations Act for 2024.[16]

59.     Inclusion on the 1260H List can lead to additional harms.  A CMC designation could result in the Office of Foreign Assets Control adding the CMC to the U.S. Department of the Treasury's Non-SDN Chinese Military-Industrial Complex Companies List, which prohibits U.S. persons from purchasing or selling public securities of designated entities.[17]

60.     Various States have also relied on CMC designations in imposing their own restrictions on companies.  For example, Utah prohibits any entity on the 1260H List from acquiring an interest in land in the state.  *See* Utah Code §§ 63L-13-101-201.  Texas prohibits public retirement systems from investing in entities affiliated with China, including entities on the 1260H List, and Governor Greg Abbott ordered state agencies to divest from China in a November 2024 letter.[18]  *See* Tex. Gov't Code Ann. §§ 809A.001, 809A.057.

61.     While the original goal of the Section 1260H List was "naming and shaming," the consequences of designation are now far worse than reputational harm—as it also imposes severe

---

[15]  Pub. L. No. 118-31, § 805(a)(1), 137 Stat. 136, 315 (Dec. 22, 2023).

[16] Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (Mar. 23, 2024).

[17] *See* Exec. Order No. 14032, 86 Fed. Reg. 30145 (June 3, 2021).

[18] Letter from Greg Abbot to Texas state agencies (Nov. 21, 2024), https://gov.texas.gov/uploads/files/press/China_Divestment_Letter_to_Pension_Systems-PR_%28FINAL%29.pdf.

financial harm.  As a result of the recently enacted BIOSECURE Act, the CMC designation is damaging to WXAT's ability to contract with customers and potential customers.  The limitations of the BIOSECURE Act will likely cause many of WXAT's customers to consider taking their business to companies without the BCC limitations, which would be detrimental for the Company.  By the market closing on June 9, 2026, the first trading day after the DoW released the June 2026 1260H List, WXAT's share price fell 3.7% in Hong Kong and 2.6% in Shanghai.[19]

## VI.    The APA Applies to Plaintiff's Claims

62.     The APA allows for judicial review of "final agency action for which there is no other adequate remedy."  5 U.S.C. § 704.  Agency action can be considered final regardless of a request for reconsideration, especially if an effort to obtain an administrative remedy would be futile.  *See id.*

63.     The DoW is an "agency" whose final actions are reviewable under the APA.  5 U.S.C. § 701.  The DoW's designation of WXAT as a CMC effective June 10, 2026 constitutes "final agency action" subject to judicial review because it is the consummation of the DoW's decision-making process with respect to WXAT's placement on the 1260H List.  5 U.S.C. §§ 551(13); 701(b)(2).

64.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  While courts are to afford heightened

---

[19] The initial steep decline in WXAT's stock price was followed, at least as of the time of filing, by a rebound.  Investing.com attributed the stock's subsequent recovery to several factors including JPMorgan's Overweight rating, which suggested JPMorgan's "view[] of the Pentagon designation as erroneous and express[ion of] continued confidence in WuXi's underlying business."  *See* Maria Ponnezhath, *Why is WuXi AppTec stock rallying today?*, INVESTING.COM (June 10, 2026), https://www.investing.com/news/stock-market-news/why-is-wuxi-apptec-stock-rallying-today-93CH-4734383.

deference to agency determinations in matters involving national security, the courts retain an important role in "ensuring that agencies have engaged in reasoned decisionmaking." *Xiaomi Corp.*, 2021 WL 950144, at *4 (*quoting Judulang v. Holder*, 565 U.S. 42, 53 (2011)).

<u>**STATEMENT OF CLAIMS FOR RELIEF**</u>

**COUNT I**

**The Designation of WXAT as a CMC Violates the Administrative Procedure Act as Arbitrary and Capricious Agency Action, in Excess of Statutory Authority, and Unsupported by Substantial Evidence, 5 U.S.C. § 706(2)(A), (C), (E)**

**(Against All Defendants)**

65. The above paragraphs are incorporated herein by reference.

66. Each of the Defendants is subject to the requirements of the APA. 5 U.S.C. § 701(b)(1).

67. Defendants' designation of WXAT as a CMC constitutes final agency action that is reviewable under the APA. The designation is unlawful because it reflects an unexplained and politically pressured reversal of the agency's prior position, is unsupported by substantial evidence, fails to articulate a rational connection between the facts found and the decision made, and exceeds the limits of Section 1260H.

68. Plaintiff has no adequate or available administrative remedy, and, in the alternative, any attempt to obtain an administrative remedy would be futile.

69. The APA requires a reviewing court to "hold unlawful and set aside agency action" found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (C), (E).

70. The DoW's designation of WXAT as a CMC violated 5 U.S.C. § 706(2)(A), (C), and (E) for the reasons described above, including: (1) designating WXAT as a CMC without

22

adequate justification, (2) failing to undertake a reasonable investigation to support the designation, (3) failing to support the designation with adequate evidence, and (4) designating WXAT as a CMC when it does not meet the statutory requirements for the designation.

71.     Defendants failed to articulate a rational connection between the facts before the agency and the decision to designate WXAT as a CMC.  The agency offered only conclusory assertions, failed to explain its reversal from its prior non-designation of WXAT, failed to identify substantial evidence supporting the statutory criteria, and failed to address the extensive contrary information WXAT provided.  The designation is therefore arbitrary, capricious, contrary to law and in excess of statutory authority.

72.     Defendants' unlawful acts are causing and will continue to cause severe and irreparable harm to WXAT and third parties, including U.S. employees, shareholders, and customers.

## COUNT II

**The Designation of WXAT as a CMC Violates the Administrative Procedure Act as Action Contrary to Required Procedure, 5 U.S.C. § 706(2)(D)**

**(Against All Defendants)**

73.     Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

74.     The APA requires a reviewing court to set aside agency action that is made "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Section 1260H requires Defendants to submit to Congress a list of each entity identified as a CMC in both classified and unclassified forms, including a justification for adding any entities to the list.  Section 1260H(b)(1).  Additionally, Defendants are required to publish the unclassified list in the Federal Register and

23

transmit the 1260H List to the heads of each appropriate Federal department and agency.  Section 1260H(b)(2), (c).

75.    To the extent that Defendants failed to comply with the requirements set forth in Section 1260H, the designation of WXAT as a CMC is without observance of the procedures required by law, in violation of the APA.

76.    Defendants' unlawful acts are causing and will continue to cause severe and irreparable harm to WXAT and third parties, including U.S. employees, shareholders, and customers.

COUNT III

**The Designation of WXAT as a CMC Violates the Administrative Procedure Act as Action Contrary to Constitutional Right, Power, Privilege, or Immunity, 5 U.S.C. § 706(2)(B)**

(Against All Defendants)

77.    Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

78.    The Fifth Amendment to the U.S. Constitution provides: "No person shall be…deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V. The Due Process Clause of the Fifth Amendment requires that parties deprived of property be given adequate notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976).

79.    WXAT maintains a permanent presence in the United States through several U.S. business locations, American board members, executive management, and employees, and substantial business relationships with U.S. entities.  It is entitled to due process.

80.    WXAT has been deprived of its property and liberty rights as a result of the DoW's designation of WXAT as a CMC.  Designation as a CMC deprives WXAT of its rights including

current and future revenue from U.S. business partners, relationships with U.S. suppliers, the ability to effectively operate its chosen business, and its reputation and professional goodwill. WXAT has lost business, been branded a national security threat, and has been stigmatized as a result of the Company's inclusion on the 1260H List.

81.    WXAT did not receive notice or an opportunity to be heard regarding its designation on the 1260H List.  Aside from the conclusory statement about WXAT's alleged indirect ownership and affiliation, WXAT did not receive any explanation for the DoW's designation or notice of any information upon which the DoW relied in making its determination.

82.    The denial of any pre-deprivation process is unjustified by any alleged national security interests, and Defendants' actions have deprived WXAT of its rights under the Fifth Amendment.

83.    Defendants' unlawful acts are causing and will continue to cause severe and irreparable harm to WXAT and third parties, including U.S. employees, shareholders, and customers.

**COUNT IV**

**The Designation of WXAT as a CMC was *Ultra Vires*, in Excess of the Agency's Statutory Authority**

**(Against All Defendants)**

84.    Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

85.    Defendants' designation of WXAT as a CMC was *ultra vires* and in excess of DoW's statutory authority.

86.    As explained above in Count II, Section 1260H sets forth a specified procedure for the DoW to exercise its statutory authority to designate an entity as a CMC, and the DoW's

25

designation exceeded the authority granted to the agency under the statute.  WXAT does not qualify for such designation under Section 1260H, and Defendants failed to put forward an adequate basis for the designation.

87.    Defendants' unlawful acts are causing and will continue to cause severe and irreparable harm to WXAT and third parties, including U.S. employees, shareholders, and customers.

**COUNT V**

**Section 1260H is Void for Vagueness as Applied to WXAT, or, in the Alternative, on its Face**

**(Against All Defendants)**

88.    Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

89.    As described above, WXAT is entitled to the protections of the Due Process Clause. If a statute does not provide fair notice of conduct that is forbidden or required, the statute is void for vagueness.  This requirement ensures that laws are not enforced in an arbitrary or discriminatory manner.

90.    Section 1260H as amended provides an unconstitutionally vague definition of "affiliated with."  The definition provided, "in close formal or informal association," does not provide fair notice of what conduct is proscribed.  The potential for broad, undefined interpretation of "affiliated with" invites arbitrary enforcement by the DoW, making Section 1260H(g)(2) unconstitutionally vague.

91.    Defendants' unlawful acts are causing and will continue to cause severe and irreparable harm to WXAT and third parties, including U.S. employees, shareholders, and customers.

## REQUESTED RELIEF

For those reasons, WXAT respectfully prays that this Court grant the following relief:

A.      Declaring that Defendants' designation of WXAT as a CMC is null, void, and with no force and effect;

B.      Declaring that Defendant's designation is not in accordance with law within the meaning of 5 U.S.C. § 706(2); in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2); and contrary to constitutional right within the meaning of 5 U.S.C. § 706(2);

C.      Vacating and setting aside the designation of WXAT as a CMC;

D.      Compelling Defendants to delete WXAT from the 1260H List;

E.      Preliminarily and permanently enjoining Defendants and their officers, employees, and agents from enforcing, implementing, applying, or taking any action whatsoever under, or in reliance on, the WXAT 1260H List designation;

F.      Awarding Plaintiff the costs of this litigation, including reasonable attorneys' fees; and

G.      Granting Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

Dated: June 11, 2026                    /s/ Timothy M. Broas

Timothy M. Broas (D.C. Bar No. 391145)
1700 K Street NW, Fifth Floor
Washington, DC 20006-3814
(202) 973-8846
tbroas@wsgr.com

27

Melissa Mills (D.C. Bar No. 90033390)
  (*pro hac vice forthcoming*)
953 East Third Street, Suite 100
Los Angeles, CA 90013-1955
mmills@wsgr.com

Michael S. Sommer
  (*pro hac vice forthcoming*)
Morris Fodeman
  (*pro hac vice forthcoming*)
Sheryl Shapiro Bassin
  (*pro hac vice forthcoming*)
31 West 52nd Street, Fifth Floor
New York, NY 10019-6118
(212) 999-5800
msommer@wsgr.com
mfodeman@wsgr.com
sbassin@wsgr.com

*Counsel for Plaintiff WuXi AppTec Co., Ltd.*