**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WUXI APPTEC CO., LTD.,

*Plaintiff*,

v.

U.S. DEPARTMENT OF DEFENSE a/k/a/
U.S. DEPARTMENT OF WAR, *et al.*,

*Defendants*.

Civil Action No. 26-2069 (JEB)

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LIMITED DISCOVERY**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARDS ..... 4

ARGUMENT ..... 6

I. The Administrative Record Is Not Incomplete ..... 6

II. Extra-Record Supplementation Is Unwarranted ..... 11

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## CASES

*Almaklani v. Trump*,
444 F. Supp. 3d 425 (E.D.N.Y. 2020) .................... 13

*Bar MK Ranches v. Yuetter*,
994 F.2d 735 (10th Cir. 1993) .................... 5

**Bellion Spirits, LLC v. United States*,
335 F. Supp. 3d 32 (D.D.C. 2018) .................... 12, 13, 14

*Camp v. Pitts*,
411 U.S. 138 (1973) .................... 5

**Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971),
*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) .................... 4, 6, 11

*City of Dania Beach v. FAA*,
628 F.3d 581 (D.C. Cir. 2010) .................... 6, 14

**Dep't of Com. v. New York*,
588 U.S. 752 (2019) .................... *passim*

*Earthworks v. U.S. Dep't of the Interior*,
279 F.R.D. 180 (D.D.C. 2012) .................... 7, 8

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
345 F. Supp. 3d 1 (D.D.C. 2018) .................... 5, 6

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005) .................... 8

*Hesai Technology Co. v. U.S. Department of Defense*,
186 F.4th 873 (D.C. Cir. 2026),
*rev'g Hesai Tech. Co. v. U.S. Dep't of Def.*, 792 F. Supp. 3d 22 (D.D.C. 2025) .................... 15

*IMS, P.C. v. Alvarez*,
129 F.3d 618 (D.C. Cir. 1997) .................... 4–5, 6

*Marine Mammal Conservancy, Inc. v. Dep't of Agric.*,
134 F.3d 409 (D.C. Cir. 1998) .................... 12

*Maritel, Inc. v. Collins*,
422 F. Supp. 2d 188 (D.D.C. 2006) .................... 5, 8

*McKoy v. Spencer*,
Civ. A. No. 16-1313, 2019 WL 400615 (D.D.C. Jan. 31, 2019) ........................................... 12

*Norris & Hirshberg, Inc. v. SEC*,
163 F.2d 689 (D.C. Cir. 1947) ........................................................................................ 5

*Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018) ..................................................................................... 8

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) ........................................................................................ 5

**Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
448 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................... 5, 8–9

*Theodore Roosevelt Conservation P'ship v. Salazar*,
616 F.3d 497 (D.C. Cir. 2010) ...................................................................................... 15

**TOMAC v. Norton*,
193 F. Supp. 2d 182 (D.D.C. 2002), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006) .......................... 6, 7

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
749 F.2d 788 (D.C. Cir. 1984) ........................................................................................ 8

*WildEarth Guardians v. Salazar*,
670 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................................... 5

**STATUTES**

5 U.S.C. § 706 ................................................................................................................ 4

Servicemember Quality of Life Improvement and National Defense Authorization Act for
Fiscal Year 2025,
Pub. L. No. 118-159, 138 Stat. 1773 (2024) ................................................................... 3, 9

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021,
Pub. L. No. 116-283, 134 Stat. 3388 ............................................................................. 1, 3

**LOCAL RULES**

LCvR 7 ........................................................................................................................... 2

**REGULATIONS**

Notice of Availability of Designation of Chinese Military Companies,
90 Fed. Reg. 1105 (Jan. 7, 2025) ...................................................................................... 3

Notice of Availability of Designation of Chinese Military Companies,
91 Fed. Reg. 35,189 (June 10, 2026) ................................................................................ 4

**INTRODUCTION**

Without properly identifying the governing legal framework for its request, Plaintiff WuXi AppTec Co., Ltd. ("Plaintiff" or "WuXi"), asks this Court to take the extraordinary step of ordering discovery into an agency action notwithstanding that the Administrative Procedure Act (APA) limits judicial review to the administrative record before the agency, not to a new record created in the district court. Plaintiff raises the specter of some undefined kind of agency misconduct in arguing that "limited" discovery into the Department of Defense's ("the Department's") procedures is essential, without actually invoking the bad-faith standard that a plaintiff must satisfy to justify such discovery. And it has come nowhere close to showing the requisite bad faith.

Even assuming that Plaintiff's proposed discovery standard permits its requested extra-record discovery, the evidence Plaintiff cites entirely fails to provide any reason to go beyond the administrative record here. Indeed, the purportedly suspect timeline of events underlying Plaintiff's designation as a Chinese military company under Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965, as amended ("Section 1260H"), only underscores that the agency follows a well-defined process for designating entities that qualify under the law. Plaintiff points to pre-designation evidence—provided to it as a good-faith gesture of the Department's willingness to supplement the administrative record with arguably relevant, albeit immaterial and unnecessary, evidence that the Department did not directly or indirectly consider but that Plaintiff requested—to suggest that Plaintiff needs *more* evidence to prove its claims.

But, as Defendants repeatedly explained to Plaintiff, that evidence predated the agency action at issue here by almost seven months. And the underlying record makes clear that the *deliberation* over the agency action at issue here continued until just before the agency action was

finalized. Indeed, pursuant to the statute, the Department conducts an annual review of the list of Section 1260H–designated entities, and it makes or revises its designations based on the latest information available to it. The fact that one Department official may have believed Plaintiff should be included on the Section 1260H list at some point in (relatively) recent history does not suffice to show—without much more—that additional information about the agency's procedures must be produced in litigation about the later designation. The record is complete, as affirmed by the relevant Department official. No more information is required to litigate Plaintiff's claims. The Court should deny Plaintiff's Motion for Limited Discovery, ECF No. 32.

## BACKGROUND

On June 11, 2026, Plaintiff sued to challenge its designation under Section 1260H as a Chinese military company. *See* Compl., ECF No. 1. Plaintiff raised five claims: an APA arbitrary-and-capricious claim; an APA contrary-to-required-procedure claim; an APA contrary-to-constitutional-right due-process claim; an *ultra vires* claim; and a constitutional-vagueness claim, presumably relying directly on the Fifth Amendment as the cause of action. *See id.* ¶¶ 65–91. In support of its discovery motion here, Plaintiff invokes only its claims that rely on the APA's cause of action. *See* ECF No. 32 at 5–15. Plaintiff moved for a preliminary injunction, *see generally* Pl.'s Mot. for Prelim. Inj., ECF No.13, which the Court granted, *see* Order at 1, ECF No. 24.

Plaintiff's suit challenges the Department's June 10, 2026 Section 1260H designation. *See* ECF No. 1 ¶ 63. The Department's Deputy Secretary of War, Steve Feinberg, approved the relevant action memo on June 5, 2026. *See* Admin. R. ("AR") at 4.[1] The Deputy Secretary sent

[1] Because the parties have not yet filed dispositive motions, and no Joint Appendix is yet forthcoming under LCvR 7(n)(2), Defendants attach portions of the full AR as Exhibit A. Citations to the AR are to the bates-stamped numbers at the bottom-left of each page. Citations to substantive legal briefs generally refer to the page numbers at the bottom of each page. Citations to other court documents generally refer to the ECF-pagination in blue at the top-right of each page.

congressional notification letters on the same day. *See* AR 5–6. The Department completed the "profile report," AR 2, underlying the designation of WuXi on May 29, 2026, *see* AR 57.

Plaintiff has "engaged with the Department" about its status under Section 1260H as a Chinese military company for several years. ECF No. 32 at 2 (citing Mem. Op. at 7, ECF No. 25). During that time, the Department published one intervening (and final) Section 1260H list, on which WuXi was not included. *See* ECF No. 25 at 7; *see also* Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105, 1105–06 (Jan. 7, 2025). Defendants also temporarily made public a pre-publication version of the list on February 13, 2026—that list included WuXi, although the list was withdrawn and never appeared in the Federal Register, meaning that the designation never came into effect. *See* Ex. 8 to Decl. of Melissa Mills ("Mills Decl.") at 2, 19, ECF No. 13-10; *see also* § 1260H(b)(2)(A), 134 Stat. at 3965; Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, 138 Stat. 1773, 2123 (2024) (explaining that the Secretary of Defense must publish the list in the Federal Register).

Plaintiff requested and received from Defendants a copy of an October 7, 2025 letter that Deputy Secretary Feinberg distributed to congressional armed-services committees ("the Feinberg letter"). *See* Ex. C to Second Decl. of Melissa Mills ("Second Mills Decl.") at 2–3, ECF No. 32-5; *see also* Ex. D to Second Mills Decl. at 2–3, 10–11, ECF No. 32-6 (noting the Department's position that the Feinberg letter was not part of the record and engaging in negotiations over a supplemental production). Deputy Secretary Feinberg notified the chairs of the House and Senate committees that "the Department has identified eight entities that it has determined are 'Chinese military companies.' " ECF No. 32-5 at 2. Deputy Secretary Feinberg concluded that the entities "should be added to the 1260H List." *Id.* WuXi was one such entity. *See id.* at 5.

Agency discussions with WuXi continued for several weeks following the Feinberg letter. *See* AR 487–515, 3602–08. And the investigation and validation of the designation—which considered materials WuXi submitted on August 26, 2024, October 14, 2025, and November 24, 2025—occurred for months after the Feinberg letter. *See* AR 57 (indicating that the underlying WuXi report was finalized on May 29, 2026); *see also* AR 4 (indicating that on June 5, 2026 the Deputy Secretary approved the Section 1260H list for publication in the Federal Register); Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35,189 (June 10, 2026). The Feinberg letter was not itself "considered" by the Department as part of the record for the June 10 agency action. *See* Certification of AR ¶ 6, ECF No. 16-1 (certifying that the administrative record in this litigation, which excluded the Feinberg letter, included a "true, correct, and complete copy of the documents that were directly or indirectly considered in connection with [the Department's] decision to identify Plaintiff on the Section 1260H list").

Following repeated requests to supplement the administrative record with the Feinberg letter—a request to which Defendants ultimately, in good faith, agreed, though they never conceded that the letter should be considered part of the administrative record itself, *see* ECF No. 32-6 at 5–6—Plaintiff nonetheless informed Defendants that it would seek the Court's leave to take limited discovery. *See* Joint Proposed Briefing Schedule at 2, ECF No. 30.

## LEGAL STANDARDS

The APA limits review of agency actions to the "whole record or those parts of it cited by a party." 5 U.S.C. § 706. Under the law, judicial review is limited to the record "compiled by the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). A reviewing court "should have before it neither more nor less information than did the agency when it made its decision." *IMS, P.C. v.*

*Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (citation omitted). That means that only those documents and materials that the agency "directly or indirectly considered" should be in the record. *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (citation omitted). The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

In an administrative-record case, the agency submits a "certification" that the "record is complete, which serves as 'formal representation by the [agency]' that it duly evaluated all predecisional documents before excluding them from the record." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("*Oceana I*") (alteration in original) (quoting *Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 694 (D.C. Cir. 1947)). And "the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Id.* (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

To be sure, the presumption of regularity can be overcome. But doing so is demanding. Broadly, there are "two ways" to expand the record. *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). First, a plaintiff might "complete" the record with materials that were not included but were actually considered by the agency, *Dep't of Com. v. New York*, 588 U.S. 752, 765 (2019), which entails "rebut[ting] the presumption of administrative regularity and show[ing] that the documents to be included were before the agency decisionmaker," *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006). "Completion entails ensuring that the entire record is before the court—the addition of those documents that influenced the agency in its decisionmaking." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 9 (D.D.C. 2018). Even errors in the initial compilation of a record and the inadvertent loss of documents, without more, fail to qualify as a "strong

showing" that the record is incomplete. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (citation omitted), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006).

The second method is by *supplementing* the administrative record. "Supplementation involves the addition of newly created evidence or of documents that were not before the agency when the decision was made, but should have been[.]" *Fort Sill Apache Tribe*, 345 F. Supp. 3d at 9. There are "three instances" that might justify supplementation: if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," if "background information" is needed to inform whether "the agency considered all the relevant factors," or if "the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (citation omitted). In general, such "extra-record discovery" is warranted only "[o]n a 'strong showing of bad faith or improper behavior.' " *Dep't of Com.*, 588 U.S. at 781 (quoting *Overton Park*, 401 U.S. at 420); *see also IMS*, 129 F.3d at 624.

## ARGUMENT

### I. The Administrative Record Is Not Incomplete.

The "indicia" that Plaintiff argues suggest that the "administrative record as originally certified by the Department" is "incomplete and inadequate to permit the Court to undertake effective judicial review" of Plaintiff's claims, ECF No. 32 at 6, are no such indicia at all. Plaintiff points primarily to the existence of the October 2025 Feinberg letter, along with two prior communications between Plaintiff and the agency and two other letters to the agency from Congress, to suggest that the agency's record certification should not benefit from the presumption of irregularity. *See id.* at 6–11. That argument fails for two reasons.

1. Even assuming that Plaintiff's identified letters *do* properly qualify as part of the administrative record, which Defendants do not concede and have never conceded, their omission does not suffice as "strong evidence" of "an incomplete record." *TOMAC*, 193 F. Supp. 2d at 195.

The five letters constitute a minute portion of the entire administrative record compiled in this litigation, which totals over 5,000 pages and includes communications between the agency and Plaintiff dating back to June 2024. *See* Certified List, ECF No. 16-2. Considered alone, that omission is not strong evidence that the record is incomplete. *See TOMAC*, 193 F. Supp. 2d at 195.

And, moreover, Defendants *agreed* to supplement the record with those letters, which further undercuts the assertion that court involvement is required. *See id.* (explaining that "[t]he fact that the defendants have supplemented the record with approximately 70 pages of additional information does not raise significant questions as to the completeness of the record"). Defendants have not conceded that these documents are part of the administrative record. In negotiations, Defendants' counsel stated—once—that the Department is "willing to complete the administrative record" with the letters Plaintiff identified. ECF No. 32-6 at 5. Defendants otherwise made clear that they viewed their agreement as concerning "supplementa[tion]" of the administrative record, not *completion* of the record, with those documents. *Id.* at 2; *see also id.* at 4; *id.* at 6 (discussing a motion to complete and/or supplement the administrative record); *id.* at 10–11 (explaining the government's position that the identified letters are not part of the record). The full discussion makes clear that Defendants never conceded that the identified letters were directly or indirectly considered by the agency and, instead, merely agreed—in good faith—to supplement the record.

Plaintiff must rebut the "presumption that the administrative record is complete by establishing by clear evidence that the documents they tender were in fact considered by the decision makers, whether directly or indirectly." *Earthworks v. U.S. Dep't of the Interior*, 279 F.R.D. 180, 186 (D.D.C. 2012). Even assuming it has made that showing for the five letters identified in its motion, Plaintiff has failed to provide specific and clear evidence as to any *other*

documents, merely asserting—without evidence—that the existence of the identified letters suggests that the entire record is incomplete. That does not suffice.

2. More importantly, though, Plaintiff has entirely failed to provide specific evidence that the letters it identifies—which it conclusorily asserts were "missing from the administrative record," ECF No. 32 at 6—were in fact directly or indirectly considered by the agency in coming to its final decision, which it made when it approved the June 10, 2026 notice. Plaintiff rightfully notes that an agency "may not 'exclude information [from the administrative record] on the grounds that it did not rely on the excluded information in its final decision,' nor may it 'skew the record in its favor by excluding pertinent but unfavorable information.' " *Id.* at 7 (alteration in original) (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196–97 (D.D.C. 2005)).

But Plaintiff omits that the key inquiry in compiling the administrative record is that the agency must have "directly or indirectly considered" the materials. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018) ("*Oceana II*") (quoting *Maritel*, 422 F. Supp. 2d at 196); *see also Earthworks*, 279 F.R.D. at 186. The record contains "no more and no less." *Oceana II*, 290 F. Supp. 3d at 77. Plaintiff essentially asserts that all documents "otherwise located in [an agency's] files" are necessarily part of the administrative record. ECF No. 32 at 7 (citation omitted). That entirely reads out the requirement that the record reflect *only* those documents directly or indirectly considered by the agency. *See Oceana II*, 290 F. Supp. 3d at 77. Plaintiff's position, which tracks the relevancy inquiry under standard discovery rules, would entirely read out the APA's judicial-review limitation and impose a traditional civil-discovery framework on administrative litigation. Such a position is untenable. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (explaining that requiring agencies to produce an over-inclusive administrative record would "requir[e] administrators to be prescient"); *see also Pac. Shores*, 448 F. Supp. 2d at

5 (explaining that the consideration limitation is "important" and that, without it, the APA's limitation on review would be "undermine[d]").

Plaintiff provides no reason to think that the materials it cites were "directly or indirectly considered" by the agency in reaching its June 2026 decision. Plaintiff asserts that the Feinberg letter undermines Defendants' position that the timeframe of the agency's "analysis" and "validat[ion of] its decision to include Plaintiff on the Section 1260H list" was "*entirely in the months after November 2025*," ECF No. 32 at 8 (quoting ECF No. 32-6 at 11). Nothing in the letter contradicts that statement. Plaintiff seems to believe that the letter reflects that the "decision [to designate Plaintiff] was made by October 7, 2025." *Id.* at 13. But the letter itself disavows any intent to consummate a final agency action that would reflect the end of the agency's decisionmaking process. *See* ECF No. 32-5 at 2 (indicating that entities "*should be added*" to the Section 1260H list (emphasis added)). Indeed, the letter could not itself consummate a final agency action, under Section 1260H, without an accompanying publication in the Federal Register. *See* § 1260H(b)(2)(A), 138 Stat. at 2123. And Plaintiff does not clarify its position that the letter was "before the Department when it decided to designate the Company," ECF No. 32 at 7, given that the letter itself is not evidence that agency decisionmakers (including Deputy Secretary Feinberg) could even consider in reaching their determination. It instead appears to reflect a preliminary agency *position*, in October 2025, not substantive evidence that might support (or contradict) an agency determination. *See* ECF No. 32-5 at 2.

Plaintiff next raises the fact that no "decisional memorandum underlying the February 2026 designation" appears in the record, which, in Plaintiff's view, means the record is necessarily incomplete. ECF No. 32 at 10. That fact, though, undermines Plaintiff's entire argument, because *no final agency action occurred in February*. The Department temporarily posted a pre-publication

Section 1260H list, but it withdrew the list before publication in the Federal Register. The February designations never took effect, which means no final agency action occurred, which in turn means that no *record* (within the meaning of the APA) underlying that hypothetical designation was ever compiled. And the agency action that *did* eventually occur—in June 2026—was based on a record that reflects that the designation was analyzed and validated up through May 29, 2026, and approved for publication on June 5, 2026. *See* AR 4, 57. That clear evidence—paired with the Department's certification that the record compiled represents a "true, correct, and complete copy of the documents that were directly or indirectly considered in connection" with the agency's June 2026 listing decision, ECF No. 16-1 ¶ 6—wholly supports Defendants' assertion that "the agency engaged in the relevant analysis for and validated its decision to include Plaintiff on the Section 1260H list entirely in the months after November 2025, a time period during which the agency developed the decisional memo at issue in this litigation," ECF No. 32-6 at 11. Materials underlying the February 2026 "designation"—to the extent that they were not also considered later—were not included because that "designation" is not the agency action at issue here.

Finally, Plaintiff faults the Department's litigating position that the Feinberg letter and other related materials are not properly part of the record. It notes that Defendants "strenuously resisted Plaintiff's efforts to obtain" the letter and characterizes that position as "reticence." ECF No. 32 at 8. It argues that such a position is "relevant" in that it suggests somehow that there are "significant questions" about the "completeness of the record." *Id.* at 7–8. That assertion is wholly unfounded. The Department maintains a non-frivolous—indeed, as explained above, substantively correct—legal position that the letters Plaintiff (conclusorily) asserts are part of the record were not, in fact, directly or indirectly considered by the agency in taking the agency action at issue here. Any "reticence" reflects only that the APA provides the governing standard for this litigation

and that a well-developed body of caselaw governing the compilation of an administrative record strictly limits the extent to which litigants and courts can "intru[de] into the workings" of the executive branch. *Dep't of Com.*, 588 U.S. at 781 (citation omitted); *see also id.* at 785 (noting that it is—and "should be"—"rare" to authorize invasive discovery into agency workings).

Indeed, the Department—like the federal government more broadly—has a very strong institutional interest in ensuring that litigation over agency actions does not swallow those actions whole, which is exactly the interest that the APA protects. *See id.* at 780–81 (explaining that courts are generally limited to evaluating agencies' contemporaneous explanations because "further judicial inquiry" represents a "substantial intrusion" into agency affairs (citation omitted)). That interest informs Defendants' desire to limit the burden that would result from ordering the production of additional documents. And that interest is well founded in the law.

## II. Extra-Record Supplementation Is Unwarranted.

Construed as a supplementation request, Plaintiff's motion should fail for two reasons: it has entirely failed to invoke the proper standard to receive extra-record discovery and, even assuming a discretionary standard permits courts to order such discovery in administrative-record cases, it has further failed to justify that supplementation, even on its own terms.

1. Perhaps seeking to avoid the requirement that it make a "strong showing of bad faith or improper behavior" to obtain "extra-record discovery," *id.* at 781 (quoting *Overton Park*, 401 U.S. at 420), Plaintiff entirely fails to support its request by any reference to that standard. *See* ECF No. 32 at 11–15. Nowhere does Plaintiff suggest that Defendants have acted in bad faith. *See id.* And nowhere does Plaintiff make the requisite showing that any of Defendants' actions—including the actions reflected in the Department's purportedly "pretextual" designation, *id.* at 13—qualify as "improper behavior," *Dep't of Com.*, 588 U.S. at 781 (citation omitted). Nor could it make that showing, given that the "political influence" it cites, ECF No. 32 at 14, even if

"unstated," can never serve as a basis to "reject an agency's stated reasons" for taking a particular agency action, *Dep't of Com.*, 588 U.S. at 781 (noting that "unstated considerations of politics" and other factors cannot serve as a basis to set aside an agency decision).

Further underscoring that limitation is the fact that each claim Plaintiff invokes in its discovery motion expressly asserts the APA as the relevant cause of action—including Plaintiff's constitutional procedural-due-process claim. *See* ECF No. 32 at 11–15; *see also* ECF No. 1 ¶¶ 65–83. The single case Plaintiff cites in support of its request to conduct discovery on its procedural-due-process claim—*McKoy v. Spencer*, Civ. A. No. 16-1313, 2019 WL 400615 (D.D.C. Jan. 31, 2019)—concerns *non-APA* constitutional claims. *See id.* at *11 (noting that the "Court could not locate" any D.C. Circuit "case deciding whether or not a plaintiff who asserts a non-APA challenge to agency action should be able to avoid the APA's bar on extra-record evidence"). And the primary case *that* opinion relied on—this Court's opinion in *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32 (D.D.C. 2018)—similarly concluded that only where a plaintiff asserted a claim not "brought under the APA" did any question about "avoid[ing] the APA's bar on extra-record evidence" arise. *Id.* at 43. Plaintiff here affirmatively invoked the "APA's restrictive procedures," *id.* (citation omitted), in bringing the claims it invokes in its discovery motion. That means that any debate over whether discretionary discovery is "permissible," ECF No. 32 at 6, over its claims—including its procedural claim—is foreclosed.

2. Even assuming Plaintiff did bring a standalone due-process claim without affirmatively invoking the APA's cause of action, as-applied challenges to the constitutionality of a statutory scheme administered by an agency remain subject to the requirement that a plaintiff exhaust administrative remedies before raising such claims in federal court. *See, e.g.*, *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413–14 (D.C. Cir. 1998). It follows, then, that

judicial review of such claims—which proceed after the production of an administrative record reflecting the agency's determination of any constitutional claims a litigant has exhausted before the agency—should be limited to that record. *See Almaklani v. Trump*, 444 F. Supp. 3d 425, 434 (E.D.N.Y. 2020) (concluding that allowing broad discovery "beyond the administrative record in every case where a plaintiff alleges a constitutional claim" would "be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record"). So the APA's restrictions continue to apply, even to standalone constitutional claims.

Indeed, this Court's opinion in *Bellion Spirits* provides a direct analogue. The Court there concluded that "district courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence." *Bellion Spirits*, 335 F. Supp. 3d at 43. It acknowledged that some courts have "permitted extra-record evidence" for constitutional claims challenging "the procedures by which the agency reached its conclusion," but declined to "adopt any bright line or categorical rule" and, further, declined to permit extra-record evidence about agency procedures when such evidence would not "advance the ball for Plaintiffs beyond their current position." *Id.* at 43–45.

To start, as noted above, intervening Supreme Court caselaw acknowledges that such a path might be viable, but requires that such discovery—like any discovery regarding "pretextual" agency motivations—be permitted only on a "strong showing of bad faith or improper behavior." *Dep't of Com.*, 588 U.S. at 780–81 (citation omitted). To the extent *Bellion Spirits* implies in dicta that discovery into a procedural claim might occur *without* such a showing, that determination has been overtaken by *Department of Commerce*. But, more to the point, *Bellion Spirits* underscores that claims related to the adequacy of an agency's process are readily susceptible to judicial review on an existing administrative record. There, the plaintiffs sought to introduce evidence about what

they could have provided the agency if they had been given sufficient notice of the agency's decisional standards. *Bellion Spirits*, 335 F. Supp. 3d at 44. The Court determined that the plaintiffs did not "need to supplement the record in order to demonstrate this connection." *Id.*

The same logic applies here. Plaintiff seeks extra-record discovery into four categories of information: (1) meetings it held with the agency, *see* ECF No. 32 at 12, which are reflected in the administrative record; (2) "generic and conclusory assertions that pre-deprivation notice would permit entities" to take "countermeasures," *id.* (citation omitted), a determination that the agency never expressly made about Plaintiff and represented as a general interest instead, *see* Defs.' Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. at 19, 23, ECF No. 17; (3) "how the Department found, validated, and came to rely upon" its evidence, ECF No. 32 at 14; and (4) internal documents outlining procedural steps the agency takes to implement Section 1260H, *see id.* at 14–15.

But none of those categories of information is material to Plaintiff's claims here, procedural or otherwise. The record itself provides the Court sufficient basis to determine whether the evidence suffices to support the agency's designation under APA arbitrary-and-capricious review. How the Department "found" such evidence is wholly immaterial. And, like in *Bellion Spirits*, discovery into generalized assertions the Department has made about the Section 1260H process, into the nature of the meetings the agency held with Plaintiff, and into the Department's internal processes is not necessary to determine whether the notice and opportunity that the Department provided Plaintiff, as clearly laid out in the administrative record, was constitutionally adequate. *See* 335 F. Supp. 3d at 44–45. Plaintiff is "free to assert" in briefing that it had no adequate opportunity to respond—additional discovery would not change that fact. *Id.* at 44. Thus, none of Plaintiff's proffered bases for justifying additional discovery satisfy the rigorous test for supplementing the administrative record. *See City of Dania Beach*, 628 F.3d at 590.

Indeed, the D.C. Circuit's recent opinion in *Hesai Technology Co. v. U.S. Department of Defense*, which Plaintiff invokes, *see* ECF No. 32 at 11–12, makes clear that a Section 1260H–related administrative record provides ample basis to determine whether the Department's procedure under the statue affords sufficient due process. *See* 186 F.4th 873, 877–81 (D.C. Cir. 2026) (determining that the Department had failed to afford the plaintiff sufficient pre-deprivation notice and an opportunity to respond to the Department's unclassified basis for designation), *rev'g Hesai Tech. Co. v. U.S. Dep't of Def.*, 792 F. Supp. 3d 22 (D.D.C. 2025) (assessing the plaintiff's due-process claims against Section 1260H designation on an administrative record). And this record—which provides many thousands of pages outlining discussions between Plaintiff and the Department, as well as the entire decisional memo forming the basis for the agency's designation and every piece of evidence cited in that memo—is not "bare" and thus provides an ample record to enable the Court to conduct "effective judicial review" of the action. *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (citation omitted). *Contra* ECF No. 32 at 4, 6 (arguing that discovery is necessary to ensure effective judicial review).

* * *

In short, Plaintiff has failed to make a clear showing that the record is incomplete. It has failed to show that the Department either acted in bad faith or engaged in improper behavior. It has thus failed to satisfy its burden to obtain extra-record discovery. And it has failed to show, even assuming that the APA's limitation on extra-record review does not apply to its claims here, that its proposed discovery is at all necessary to the resolution of its claims.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's motion for limited discovery.

Dated: October 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 353-7578
william.s.jankowski@usdoj.gov

*Counsel for Defendants*