**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WUXI APPTEC CO., LTD.,

*Plaintiff,*

v.

U.S. DEPARTMENT OF DEFENSE a/k/a
U.S. DEPARTMENT OF WAR, et al.,

*Defendants*.

Civil Action No. 1:26-cv-02069-JEB

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR LIMITED DISCOVERY**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 2

A. The Company Made a Strong Showing of an Incomplete Record ..... 2

B. The Due Process Claim Does Not Require Evaluation of the Substance of the Agency's Decision, So Discovery Is Appropriate ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,
663 F.3d 476 (D.C. Cir. 2011) ....................3

*Bellion Spirits, LLC v. United States*,
335 F. Supp. 3d 32 (D.D.C. 2018) ....................9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ....................9, 10

*Cnty. of San Miguel v. Kempthorne*,
587 F. Supp. 2d 64 (D.D.C. 2008) ....................5

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ....................9, 10

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005) ....................5

**McKoy v. Spencer*,
2019 WL 400615 (D.D.C. Jan. 31, 2019) ....................9

**Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018) ....................3, 4, 5

*TOMAC v. Norton*,
193 F. Supp. 2d 182 (D.D.C. 2002) ....................5, 6

*Urban Sustainability Directors Network v. U.S. Dep't of Ag.*,
2026 WL 1500832 (D.D.C. May 29, 2026) ....................3

## INTRODUCTION

The Complaint alleges that the Department of War's designation of the Company was unlawful because (1) it lacked adequate justification, (2) the Department failed to undertake a reasonable investigation to support it, (3) the Department failed to support the designation with adequate evidence, and (4) the designation did not meet statutory requirements. ECF No. 1 ¶ 70. The narrowly tailored discovery that the Company seeks is important to ensuring that this Court has a full and fair record on which to adjudicate these claims.

The Government's Opposition dances around essential questions, all of which remain unanswered, and which demonstrate the import of the discovery sought: what materials were before the Department on October 7, 2025, when—as conveyed to members of Congress through Deputy Secretary of War Feinberg, its designated official charged with making 1260H List decisions—it "determined" that the Company "should be added to the 1260H List"? On what factual basis was that October 2025 determination made? When the Department published and then hurriedly withdrew an identical version of the 1260H List in February 2026, months before the designation at issue in this case was published, was that listing supported by an underlying decisional memorandum? If there was a decisional memorandum for the February 2026 listing, did the Department consider it in making the identical June 2026 designation a few months later? When and how did the Department identify and validate the questionable evidentiary sources underlying the decisional memorandum for the June 2026 designation, which appear to have been publicly available on the internet starting in 2019, 2022, 2024, respectively? More fundamentally: what, if any, procedural framework must the Department follow, and to what, if any, objective standards is the Department held, when it makes consequential decisions about which companies will be added to its 1260H blacklist? The answers to these questions are needed for a fair

evaluation of whether the Department's action was arbitrary and capricious, and whether it denied the Company due process of law.

The Government posits that none of these questions matter and the Company is entitled to no answers, because the Department did not analyze or validate its decision until after communicating it to Congressional leaders, and because it withdrew the February 2026 listing before publication in the Federal Register. The Government further downplays the import of the letter from Deputy Secretary of War Feinberg—the official charged with making 1260H designations—expressly advising members of Congress that "the Department … has determined" that the Company should be designated, suggesting that the letter casually reflected what "one Department official may have believed," perhaps in his personal capacity. Opp. at 2-3, 9. And the Government's Opposition falls short in other ways, including by narrowing the standard for discovery in APA cases, distancing itself from its admission that missing documents the Company identified would be properly part of the administrative record (if the Government could only find them), and misapplying the Supreme Court's 2019 employment of a decades-old standard not applicable to the instant issue. *Id.* at 14-15.

Like the administrative record it defends, the Government's Opposition sheds no light on the key issues of whether the challenged action complied with baseline constitutional requirements or with the Department's own internal procedures. These facts are plainly important to an assessment of the Department's actions. The limited and narrowly tailored discovery sought by the Company should be permitted.

## ARGUMENT

### A. The Company Made a Strong Showing of an Incomplete Record

The Company has demonstrated that limited discovery is appropriate. With respect to claims brought only under the APA, discovery is permitted beyond the record on either "(1) 'a

significant showing … that it will find material in the agency's possession indicative of bad faith *or an incomplete record*,' or (2) that 'the record is so bare as to frustrate judicial review.'" Mot. at 5 (quoting *Urban Sustainability Directors Network v. U.S. Dep't of Ag.*, 2026 WL 1500832, at *7-8 (D.D.C. May 29, 2026) (emphasis added)); *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011). The Opposition claims that the Company failed to identify and meet the correct standard to permit discovery in an APA case because the Motion does not use the words "bad faith" to describe the Government's conduct. Opp. at 1. But this ignores both the history of this case (*see, e.g.*, Mot. at 7-10, 13; ECF No. 13 at 9-10) and the Company's strong showing that the Department's submitted administrative record is incomplete, an independent ground warranting discovery.

The Company made the requisite "significant," "strong, substantial, or prima facie showing" that the Company "will find material in the agency's possession indicative of … an incomplete record." *See* Mot. at 5-11; *Air Transp. Ass'n*, 663 F.3d at 487-88. The Company identified specific, material documents that were unquestionably "before the agency at the time [it] made [its] decision," and were not included in the administrative record. *See id.* at 7 (quoting *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018)). Beyond showing that the record is *likely* incomplete, these documents establish that the administrative record *is* undeniably missing key documents, and limited discovery is warranted to help determine the scope of the issue. Additionally, the Department has offered conflicting periods during which the Department was purportedly making its determination, providing further indicia of an incomplete record. *See id.* at 6-9.

The Government's attempts to counter the Company's strong showing are insufficient. *First*, the Government acknowledges, but attempts to recharacterize, its admission that the record

was incomplete. *See* Opp. at 7. The Government argues it acknowledged that the record was incomplete "once" and that subsequent communications "made clear" the Department intended to "supplement" rather than "complete the administrative record" with those documents. *Id.*

Completion and supplementation of the administrative record are related, though legally distinct. *See Oceana*, 290 F. Supp. 3d at 77. Supplementation refers to documents that were not before the agency but that should nonetheless be included in the administrative record under three "unusual circumstances": "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information [is] needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative review so as to frustrate judicial review." *Id.* at 77-78 (cleaned up). In contrast, "completion" of the record refers to the inclusion of documents that were "allegedly before the agency but [were] nevertheless excluded from the administrative record." *Id.* at 78.

Rather than support the Government's position, communications instead demonstrate that counsel for both parties used the term "supplement" synonymously with "complete" rather than as a legal term of art. *See* ECF No. 32-6 ("Ex. D"). For example, counsel for the Government wrote:

- "To the extent you believe any materials may have been **inadvertently omitted from the record**, we're happy to ask the Department whether that's the case, and can **certify a supplemental administrative record production if necessary**. Please let us know the specific portions **you believe are incomplete**." *Id.* at 8 (emphasis added).

- "Our client is still considering whether it **might be able to include the referenced documents in the administrative record**." *Id.* at 6 (emphasis added).

- "[W]e would suggest jointly moving the Court to enter a briefing schedule on a **motion to complete/supplement** the administrative record with your requested documents … **the Department is willing to include at least some of your referenced documents in the administrative record**." *Id.* at 5 (emphasis added).

- "[W]e just heard back from our client that **they're willing to complete the administrative record** with three additional record documents you identified." *Id.* at 4 (emphasis added).

These communications, which refer to, *e.g.*, materials the Company believed "may have been inadvertently omitted" (*id.* at 8), discuss documents putatively before the agency and nevertheless excluded from the administrative record. For example, the June 11, 2024 letter from the Company to Assistant Secretary Taylor-Kale, which the Company requested in Exhibit D, was referenced as an attachment to emails in the administrative record and nevertheless omitted from the administrative record. *See* Ex. D at 7-9; AR0082, AR0083, AR0087. The Government's belated attempt to recast its agreement to provide the missing documents as "supplementation," does not negate the Company's strong showing that the record is incomplete. *See* Opp. at 6, 11.

*Second*, the Government argues that the identified omitted documents were not part of the administrative record because they were not "directly or indirectly considered" by the Department. *Id.* at 8. While the administrative record includes only the documents the agency "directly or *indirectly* considered," the scope must include "all documents 'that were *before* the agency at the time the [designation] decision was made.'" *See* Mot. at 7 (quoting *Oceana*, 290 F. Supp. 3d at 78) (emphasis added). It is "'axiomatic that documents created by an agency itself or otherwise located in its files were before it.'" *Id.* (quoting *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008)). As the identified documents were correspondence the Department sent to, or received from, the Company and certain members of Congress regarding the decision to designate the Company, they were clearly part of the administrative record. Mot. at 10; Opp. at 6. The Government cannot exclude information from the record because it did not rely on it, nor may it skew the record "'by excluding pertinent but unfavorable information.'" Mot. at 7 (citing *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196-97 (D.D.C. 2005)).

*Third*, the Government's reliance on *TOMAC* is misplaced. Opp. at 5-6 (citing *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006)). In

*TOMAC*, plaintiffs asserted the administrative record was incomplete because defendants had supplemented; because plaintiffs received three additional documents through FOIA requests, which the opinion does not describe; and because the record did not include information from other federal agencies involved in decision-making. *TOMAC*, 193 F. Supp. 2d at 195. The court reasoned that supplementation of the original administrative record did not strongly suggest the record was *still* incomplete, noting this was particularly true because when defendants supplemented the record, they provided a certification statement and "affidavits stating that searches were completed to ensure that no additional documents were omitted." *Id.* The Government here has not officially supplemented or completed the record—and indeed, it is not clear that it will ever do so, because it has for months been unable to locate certain communications that were "archived pursuant to standard record-retention policies." Ex. D at 4. Nor has it provided or offered any affidavit attesting to the search efforts. And here, such a gesture would do little to address this administrative record's deficiencies.

And in *TOMAC*, the court found that the existence of three undescribed documents received through a FOIA request did not sufficiently show that plaintiff would find further material in the agency's possession indicative of an incomplete record. *See TOMAC*, 193 F. Supp. 2d at 195 (noting plaintiff's apparent confusion between what constitutes the administrative record with "FOIA's emphasis on every scrap of paper that could or might be created"). The Government's focus on the *quantity* of documents identified as missing from the administrative record ignores the indicia of an incomplete record arising from the *quality* of those documents. All the missing documents that the Company has thus far identified discuss the Company's designation status, and one reveals a determination by the Department to designate the Company months before the

designation was finally publicly announced (and while the Department continued to entertain discussions with the Company on why it should *not* be designated).

*Finally,* the Government offers no convincing response to the Company's argument that the conflicting timelines offered for the Department's decision-making suggest further omissions of documents from the administrative record. *See* Mot. at 9; Opp. at 8-10. Instead, the Government doubles down, arguing that the Department's analysis and validation of "'its decision to include Plaintiff on the 1260H list' was 'entirely in the months after November 2025.'" Opp. at 9 (citations omitted). The Government argues this timeline is not inconsistent with the October 7, 2025 Feinberg Letter to Congress, maintaining that the Feinberg Letter's use of the modal passive verb form "should be added" saved it from reflecting the Department's true determination. *Id.* The Government additionally argues that the Letter merely reflects that "one Department official may have believed Plaintiff should be included on the Section 1260H list at some point in (relatively) recent history." *Id.* at 2, 9. The Government's minimization of Deputy Secretary Feinberg as "one Department official" belies the fact that he is *the* official who "oversees the Section 1260H process," as acknowledged in the Answer. ECF No. 29 ¶ 16. Moreover, the Government's position that the letter to Congress merely reflects Deputy Secretary Feinberg's personal opinion and not the intent of the Department flatly contradicts the plain language of the Feinberg Letter, which explicitly states that "***the Department*** has identified eight entities that ***it has determined*** are 'Chinese military companies' in accordance with the statute that should be added to the 1260H List." ECF No. 32-5 (emphasis added).

The Government has taken a similar position on the Department's decision to designate the Company in February 2026. Opp. at 9-10. The Government argues that because the February 2026 designation was not published in the Federal Register, there was no final agency action and

no record underlying the designation. *Id.* The Government's arguments with respect to these designation decisions misapprehend the relevance of the conflicting timeframes. The Company does not argue that there was final agency action or a separate administrative record for the decisions memorialized in the October 7, 2025 Feinberg Letter or the February 2026 temporarily posted 1260H List. Rather, the Department's conflicting representations make it impossible to determine the proper temporal scope of its decision-making process (and thus the underlying record) for the operative designation in June 2026, and serve as reasonable, non-speculative grounds to believe that documents were omitted from the administrative record. *See* Mot. at 9.

Accepting the Government's narrow interpretation of the time-period for the decision-making process at face value would mean that the decision to designate the Company in June 2026 was wholly divorced from the decision to (at the very least) announce to Congress that it intended to do so in October 2025. It would also mean that while the decision-making regarding the operative June 2026 designation began "entirely in the months after November 2025," that decision-making was also distinct from the decision to post, then immediately withdraw, the public announcement of the Company's designation in February 2026. Such an artificially narrow and nonsensical construction of the Department's decision-making process is further belied by the fact that the Department itself claims to have relied on information that pre-dated the October 2025 Feinberg Letter. *See, e.g.*, ECF No. 19-3 (January 28, 2024 internet post cited at AR4580-4585).

The Company has thus made the requisite strong showing that it will find material in the agency's possession indicative of an incomplete record and respectfully requests that the Court provide leave to serve the Company's limited discovery requests.

**B. The Due Process Claim Does Not Require Evaluation of the Substance of the Agency's Decision, So Discovery Is Appropriate**

The Company provided an independent ground authorizing discovery with respect to the Company's due process claim. *See* Mot. at 6, 11. When claims challenge the process provided in agency action, discovery is appropriate and not subject to the APA's restrictions if the claims do not require the court to "evaluate the substance of the agency's decision made on the administrative record." *See id.* at 11; *McKoy v. Spencer*, 2019 WL 400615, at *11 (D.D.C. Jan. 31, 2019). The Government responds that *McKoy* is distinguishable because it concerned non-APA constitutional claims. *See* Opp. at 12. But neither *McKoy*'s holding nor this Court's holding in *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32 (D.D.C. 2018), forecloses the availability of discovery when the claim alleges a failure to provide due process in the context of an APA violation. To the contrary, *McKoy*, as here, dealt with a constitutional due process challenge that was governed by the APA and held that the question of whether the claim required evaluation of the substance of the decision, as opposed to the process, was dispositive. *McKoy*, 2019 WL 400615, at *10. Evaluation of the Company's due process claim does not require evaluation of the substance of the Department's designation decision, so discovery should be permitted.

The Government next responds that a 2019 holding in *Department of Commerce* imposes a new "strong showing of bad faith or improper behavior" requirement that supplants the language in *McKoy* and *Bellion Spirits*. Opp. at 13 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019)). In 1971, the Supreme Court held that "a strong showing of bad faith or improper behavior" was necessary to obtain discovery inquiring into "the *mental* processes of administrative decisionmakers." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added). Far from imposing a new standard, *Department of Commerce* quoted *Overton*

*Park* to note its recognized exception "to the general rule against inquiring into 'the mental processes of administrative decisionmakers.'" *Dep't of Com.*, 588 U.S. at 781 (citation omitted).

But just as evaluation of the Company's due process claim does not require an inquiry into the substance of the Department's decision, the Company's limited discovery requests inquire into whether the Company was afforded proper process, not "mental processes." The Company's Proposed Interrogatory Requests seek basic factual information—for instance, the dates certain determinations were made, the identities of individuals who identified certain documents, and information about certain supporting documents. *See* ECF No. 32-3. Likewise, the Company's Proposed Document Requests seek memoranda and similar documents. *See* ECF No. 32-4. This will help determine "how the Department came to rely on its stated evidence, whether it verified its own sources, and whether the justifications were pretext for a decision reached first and justified only afterwards." *See* Mot. at 4. That the answers to these questions could support a finding of pretext does not equate these limited discovery requests with the depositions of agency personnel in *Overton Park* or *Department of Commerce* and does not require that these requests meet the exception for inquiries into "decisionmakers' mental processes" established in those cases.

As adjudication of the Company's due process claim does not require evaluation of the substance of the Department's determination, and the Company's limited discovery requests do not inquire into any decisionmaker's mental processes, the discovery requests related to that claim are warranted and are not subject to the APA's discovery restrictions.

## CONCLUSION

For the foregoing reasons, the Company respectfully requests that the Court grant this Motion, permit the Company to serve its Proposed Interrogatories and Requests for Production, and order the Department to respond to the discovery requests within 21 days.

Dated: November 5, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Melissa Mills*
Melissa Mills (D.C. Bar No. 90033390)
953 East Third Street, Suite 100
Los Angeles, California 90013
(323) 210-2991
mmills@wsgr.com

Michael S. Sommer
(*pro hac vice* forthcoming)
Morris J. Fodeman
(admitted *pro hac vice*)
Sheryl Shapiro Bassin (N.Y. Bar No. 4662797)
(admitted to practice before this court)
31 West 52nd Street, Fifth Floor
New York, New York 10019
(212) 999-5800
msommer@wsgr.com
mfodeman@wsgr.com
sbassin@wsgr.com

Timothy M. Broas (D.C. Bar No. 391145)
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8846
tbroas@wsgr.com

*Counsel for Plaintiff WuXi AppTec Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2026, the foregoing was electronically filed and served through this Court's CM/ECF system upon any parties or counsel of record registered with the CM/ECF system.

Respectfully submitted,

s/ *Melissa Mills*
Melissa Mills (D.C. Bar No. 90033390)